**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANNA V. MEDYANTSEVA,** Plaintiff, -against- COMMISSIONER OF SOCIAL SECURITY Defendant. | **1:25-cv-1673 (ALC)** **OPINION AND ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Anna Medyantseva (hereinafter, "Plaintiff" or "Ms. Medyantseva") brings this action appealing the decision of the Commissioner of Social Security ("Commissioner") to reject her application for Title XVI Supplemental Security Income ("SSI"). Currently pending before the Court is Plaintiff's Motion to Remand Proceedings for Reconsideration. After considering the Parties' submissions, Plaintiff's motion is **DENIED.**

## BACKGROUND

### I. Procedural Background

On February 2, 2023, Ms. Medyantseva filed an application for SSI based on a disability which allegedly commenced on December 21, 2022. ECF No. 1-1, at 4. On June 14, 2023, the Social Security Administration denied her claim. *Id*. Plaintiff's claim was denied again upon reconsideration on October 4, 2023. *Id*. Plaintiff appealed the denial, filing a written request for hearing on October 11, 2023. *Id*. On April 2, 2024, Plaintiff testified at a hearing before Administrative Law Judge ("ALJ") Latanya White Richards. ECF No. 8 ("Record" or "R."), at

41. Plaintiff was accompanied by a representative, Divya Tulsiani. *Id*. On April 24, 2024, the ALJ rendered her decision denying Plaintiff's claim and concluding that Plaintiff had not "been under a disability within the meaning of the Social Security Act since February 2, 2023, the date the application was filed." ECF No. 1-1, at 5.

Plaintiff requested a review of the ALJ's decision, and the Appeals Council denied her request on January 15, 2025. R. at 1. The Commissioner deemed the ALJ's decision to be the "final decision" in Plaintiff's case. *Id*. After receiving the letter from the Appeals Council on January 28, 2025, Plaintiff filed a complaint for judicial review of the decision on February 25, 2025, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). ECF No. 1, at 1-3. On the same day, Plaintiff filed a request to proceed in forma pauperis. ECF No. 2. On May 5, 2025, the Commissioner filed the Administrative Record. ECF No. 8. On February 3, 2026, Plaintiff filed a motion to remand proceedings for reconsideration. ECF Nos. 21-23. On March 17, 2026, the Commissioner submitted an opposition brief. ECF No. 28. On March 31, 2026, Plaintiff submitted a reply memorandum in support of her motion to remand proceedings for reconsideration. ECF No. 29.

## II. Factual Background

### A. Plaintiff's Background

Ms. Medyantseva was born on July 17, 1973. R. at 21. At the time of her hearing before the ALJ, she was 50 years old and "struggling with housing instability." *Id*. at 45; ECF No. 22, at 2. She had not been married and had no children. R. at 191. Ms. Medyantseva attended college in Russia and earned a master's degree in art. *Id*. at 45, 243. From August until October of 2022, she "worked for an art company on a project that lasted a few months." *Id*. at 243-244. She reportedly had no other "full-time, permanent" jobs in the 15 years preceding the hearing. *Id*. at

47.

Ms. Medyantseva was 49 years old when she allegedly became disabled on December 21, 2022. *Id*. at 71. Since then, she goes outside "for doctor's appointments and food," as well as "sunshine." *Id*. at 54. Ms. Medyantseva walks independently but requires a break after "two blocks" and takes a cane for longer distances. *Id*. at 50. Ms. Medyantseva continues to create art. *See id*. at 310-325.

**B. Plaintiff's Alleged Disabilities**

Ms. Medyantseva initially filed a claim for disability due to "[a]nemia, [p]ruritus, [atherosclerosis] heart disease, [and d]isp fracture of 5th metatarsal." *Id*. at 71. The ALJ also considered impairments including "left foot valgus deformity of the great toe," "status post open reduction internal fixation (ORIF), closed displaced fracture of the fifth metatarsal cone of the left foot," "anxiety disorder," and "depressive disorder." *Id*. at 12. The Court discusses each in turn.

With regards to Ms. Medyantseva's anemia, pruritus, and heart disease, the ALJ found that Plaintiff had "received little treatment for" the conditions, there were "few to no symptoms noted in the record" from these conditions, and "no doctors found any functional limitations" due to these conditions. *Id*. at 12-13. The ALJ similarly noted for Plaintiff's left foot valgus deformity "little treatment," "few symptoms noted in the record" and no medical findings of "any functional limitations." *Id*. At her hearing before the ALJ, Plaintiff offered little to no testimony about these conditions and their impact on her daily life. *See id.* at 41-68.

As for Plaintiff's anxiety disorder and depressive disorder, Plaintiff began mental health treatment in April 2022 at Maimonides Community Mental Health Center. *Id*. at 444. She states that her anxiety and depression stem from "the [Russia-Ukraine] war and her ongoing housing

instability." *Id*. at 902. She alleges that while she was staying at a women's shelter, other women told her to "go back to Russia" and threatened physical violence. *Id*. at 419. Although Plaintiff saw her therapist frequently, usually "once in two weeks," she continued to experience physical and mental symptoms as a result of her anxiety and depression. *See id*. at 51-52 ("Sometimes, I can't swallow…I lose my [ ] interest for things…I need to talk with somebody").

On December 21, 2022, Plaintiff fell from a ladder while painting a ceiling, fracturing her left foot. *Id*. at 484-485. She received surgery on December 23, 2022, *id*. at 500, before beginning physical therapy. *Id*. at 506-507. Plaintiff testified that she feels a "tingling, dull pain in [her] foot and ankle," with greater pain when she does not attend physical therapy or when she uses the foot more. *Id*. at 49.

### C. Evidence of Medical Treatment in the Record

#### i. Plaintiff's Foot Treatment During Alleged Disability Period

After Plaintiff's fall on December 21, 2022, she was diagnosed with a left foot 5th metatarsal fracture. *Id*. at 484. She underwent surgery at Coney Island Hospital Center (renamed South Brooklyn Health, *see id*. at 351), where Dr. Ilya Shnitser performed an open reduction and internal fixation of her left foot 5th metatarsal. *Id*. at 500. Following her discharge from South Brooklyn Health, Plaintiff began rehabilitation treatment at Queens Nassau Rehab and Nursing Center on January 25, 2023. *Id*. at 613. During rehabilitation, Plaintiff began to walk with a "rolling walker," *id*. at 394, and her care plan as of February 22, 2023, listed "Tylenol" as the only medication for pain in her left foot, *id*. at 412-413. On February 24, 2023, she was discharged from Queens Nassau Rehab and Nursing Center. *Id*. Follow-up appointments at South Brooklyn Health indicated that Plaintiff's fracture was "healing," *id*. at 461, and that she was able to ambulate with a cane, *id*. at 467. On April 25, 2023, at a psychotherapy appointment,

Plaintiff shared that "she ha[d] come a long way [f]rom her fall in December and continue[d] to receive physical therapy 2x[ ] weekly." *Id.* at 419.

On July 31, 2023, Plaintiff sought treatment at South Brooklyn Medical Center following an incident on the bus where another woman "stepped on her surgical site." *Id.* at 834. She kept attending physical therapy, *see id.* at 831-834; 975-987, and she reported "continued improvement," although she also continued to experience pain and swelling while walking and standing, *id.* at 980.

**ii. Plaintiff's Mental Health Treatment**

Plaintiff began mental health treatment at Maimonides Medical Center on April 27, 2022. *Id.* at 444. Her initial treatment plan suggested bi-weekly individual psychotherapy appointments to help reduce symptoms of chronic depression. *Id.* at 451. Later that year, her therapist also diagnosed her with anxiety. *Id.* at 442. Plaintiff attended regular psychotherapy appointments for months, *id.* at 418-452, where frequent topics of conversation included her "unstable housing," *id.* at 443, "financial struggles," *id.* at 435, and family in Russia, *id.* at 433. Along with psychotherapy, Plaintiff took prescription medications to treat her anxiety. *Id.* at 548.

Plaintiff's anxiety over her housing, *see id.* at 848 ("she does not feel safe at the shelter she currently is in"), drove her to visit four hospitals from May 3, 2023, through May 6, 2023: South Brooklyn Medical Center, *id.* at 1045, Maimonides Medical Center, *id.* at 1628, Mount Sinai Morningside, *id.* at 760, and Bellevue Hospital Center, *id.* at 848. During those visits, she reported "palpitations," *id.* at 1628, "chest pain," *id.* at 1045, and "blurry vision," *id.* at 846. Subsequent psychiatric evaluations and therapy sessions noted that she had a "pleasant, calm and well-related" appearance, *id.* at 894, as well as a "resilient and future oriented" attitude, *id.* at 902, though she still presented with an "anxious mood" at times, *id.* at 904.

**D. Medical Opinions in the Record**

**i. Consultative Examinations**

On May 25, 2023, Dr. Ioanis Atoynatan conducted a consultative examination of Plaintiff. *Id*. at 778. At this examination, Plaintiff recounted her fall and left foot surgery before sharing that her "pain was doing well but currently it [was] about a 5/10." *Id*. She reported living alone, dressing daily, showering "roughly about three times a week," and spending her time "reading and going to the museum." *Id*. at 779. Dr. Atoynatan observed a "slight limping" gait on Plaintiff's left side, which disappeared with use of a cane. *Id*. Plaintiff needed "no help getting on and off [the] exam table," was "[a]ble to rise from [the] chair without difficulty," and demonstrated "good" "[c]ooperation and effort." *Id*. She could not "do any heel or toe walking." *Id*. At the end of the examination, Dr. Atoynatan stated that Plaintiff had "mild limitations in heavy lifting, carrying, prolonged standing, prolonged walking, and performing activities that may require foot control due to her foot problem." *Id*. at 781.

On June 6, 2023, upon reviewing Plaintiff's medical records, Dr. U. Ng, a state agency medical consultant, determined that Plaintiff had the residual functional capacity ("RFC") to occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; and stand, sit, or walk with normal breaks for "[a]bout 6 hours in an 8 hour workday." *Id*. at 74. Dr. Ng concluded that Plaintiff had several exertional and postural limitations for activities such as pushing or pulling in her lower extremities, climbing stairs and ladders, kneeling, and crawling. *Id*. at 74-75. To explain this RFC determination, Dr. Ng cited notes from Plaintiff's medical records and Dr. Atoynatan's examination, including Plaintiff's slight limp, her use of a cane, and her inability to "do any heel or toe walking." *Id*. Dr. Ng opined that Plaintiff had "been weightbearing as tolerated and progressing in PT." *Id*. On September 25, 2023, Dr. C. Li, another state agency

medical consultant, considered additional medical records, including x-rays demonstrating that Plaintiff's "[f]racture appears to be healed with hardware intact," and affirmed the prior RFC determination. *Id*. at 85.

On June 9, 2023, E. Selesner, Psy.D., a state agency psychological consultant, reviewed Plaintiff's psychiatry records and determined that Plaintiff had some limitations affecting her mental residual functional capacity, including her "ability to carry out detailed instructions" and "interact appropriately with the general public," but she was "capable of following supervision and relating appropriately with coworkers." *Id*. at 76-77. On September 21, 2023, H. Rozelman, Ph.D., another state agency psychological consultant, reviewed Plaintiff's medical records, along with more recent psychiatry appointments where Plaintiff had presented as "resilient and future oriented," and affirmed the prior RFC determination. *Id.* at 82-83.

**ii. Vocational Expert Testimony**

At the hearing before the ALJ, Theresa Hopkins testified as a vocational expert. *Id*. at 41. The ALJ requested that Ms. Hopkins consider Plaintiff's age and education, as well as her RFC, to enumerate jobs in the national economy which Plaintiff could perform. *Id*. at 58-59. Ms. Hopkins listed three jobs: Cashier II, Routing Clerk, and Mail Clerk. *Id*. at 59. Ms. Hopkins testified that "60 or 70" percent of these jobs allowed for sit/stand options. *Id*. at 62-63. The jobs also involved "frequent" interaction with the public. *Id*. at 61.

The ALJ acknowledged that Plaintiff had "objected to the total number of jobs available for each position," as well as the appropriate reduction from sit/stand limitations. *Id*. at 22. Even granting Plaintiff's proposed numbers and percentages, the ALJ found that work "would still exist in significant numbers in the national economy" for an individual in Plaintiff's position. *Id*. at 23.

### E. Additional Medical Evidence Submitted Following the Commissioner's Decision

Following the denial of Plaintiff's request for review of the ALJ's decision, Plaintiff filed a complaint accompanied by approximately 1500 pages of medical records. *See* ECF Nos. 23 through 23-18. The newly submitted evidence covers years of Plaintiff's mental health and left foot treatment, accumulating records from before and after the ALJ's decision. *See id*. Plaintiff's Exhibit A ("P. Ex. A") encompasses Plaintiff's full set of medical records, as of December 30, 2025, from Maimonides Medical Center. ECF Nos. 23-1 through 23-13. Plaintiff's Exhibit B ("P. Ex. B") includes Plaintiff's full set of records, as of January 20, 2026, from Absolute Care Physical Therapy Group. ECF No. 23-14. Plaintiff's Exhibit C ("P. Ex. C") comprises Plaintiff's full set of medical records, as of January 14, 2026, from New York City Health and Hospitals, as well as South Brooklyn Health. ECF Nos. 23-15 through 23-18.

## LEGAL STANDARD

### I. Judicial Review of the Commissioner's Determination

A district court reviews a Commissioner's final decision under 42 U.S.C. § 405(g) to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).

The substantial evidence standard means that once an ALJ finds facts, a district court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.

1994)). In other words, this Court must afford the Commissioner's determination considerable deference and may not "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted). Thus, if a court finds a determination to be supported by substantial evidence, it "must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

## II. Remand

42 U.S.C. § 405(g) also provides that a court may "remand the case to the Commissioner of Social Security for further action," and it may order the Commissioner to consider additional evidence, but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The Second Circuit has characterized these requirements as a triple standard:

> "[A]n appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier."

*Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotation marks and citations omitted).

## III. Commissioner's Determination of Disability

### a. Definition of Disability

A disability, as defined by the Social Security Act, renders a person unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A). Further, "[t]he impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

**b. The Commissioner's Five-Step Analysis of Disability Claims**

The Commissioner uses a five-step process to determine whether a claimant has a disability within the meaning of the Social Security Act. *Selian*, 708 F.3d at 417; *see* 20 C.F.R. § 404.1520.

> "First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers from such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled ... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform."

*Selian*, 708 F.3d at 417-18 (citing *Talavera*, 697 F.3d at 151; 20 C.F.R. § 404.1520).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and 'bears the burden of proving his or her case at steps one through four.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). At step five, however, "the burden shifts to the Commissioner to show that there [are] a significant number of jobs in the national economy that [the claimant] could perform based on his residual functional capacity, age, education, and prior vocational experience." *Butts v. Barnhart*, 388 F.3d 377, 381

(2d Cir. 2004) (citing 20 C.F.R. § 404.1560).

## IV. The ALJ's Decision

First, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since February 2, 2023. R. at 12. Second, the ALJ concluded that Plaintiff had the following severe impairments: status post open reduction internal fixation, closed displaced fracture of the fifth metatarsal cone of the left foot; anxiety disorder; and depressive disorder. *Id*. Third, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or was the medical equivalent of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). *Id*. at 13. Fourth, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work with several limitations, including alternating between sitting and standing for portions of the day. *Id*. at 15-16. Fifth, the ALJ concluded that Plaintiff had no past relevant work. *Id*. at 21. Based on this assessment and the testimony of the vocational expert, ALJ Richards determined that Plaintiff was capable of performing work in the following occupations: Cashier II, Routing Clerk, and Mail Clerk. *Id.* at 22. Accordingly, ALJ Richards determined that Plaintiff was not under a disability, as defined by the Social Security Act, from February 2, 2023, the date of Plaintiff's application, through April 24, 2024, when the ALJ rendered a decision.

## DISCUSSION

Plaintiff contends that "new medical records" obtained by her counsel demonstrate the persistence and severity of her foot pain, depression, and anxiety. ECF No. 22, at 12. Specifically, Plaintiff alleges that a new diagnosis of left Morton's Neuroma, coupled with evaluations for chronic foot pain and numbness, show that "not only can she not stand for half an hour at a time, but she also cannot sit for that long." *Id*. at 15-16. Further, Plaintiff puts forth

"new records from [her] therapy appointments" to establish the extent of her social anxiety, including her alleged inability to "handle [ ] frequent interaction with the public." *Id*. at 13. Plaintiff submits this "new evidence" to request that the Court remand her case to the ALJ for a *de novo* hearing pursuant to 42 U.S.C. § 405(g).[1] *Id*. at 18.

Defendant argues that the records submitted by Plaintiff after the Appeals Council decision are neither new nor material, asserting that Plaintiff has not shown a "reasonable possibility that the new evidence would have influenced the [Commissioner] to decide [her] application differently." ECF No. 28, at 9-11 (citing *Tirado*, 842 F.2d at 597). For the following reasons, the Court finds that the evidence submitted by Plaintiff does not meet the triple standard set out in *Tirado* and does not justify remand.

## I. Plaintiff Does Not Meet The Good Cause Requirement

The Second Circuit requires that a plaintiff seeking remand based on new evidence show "good cause for her failure to present the evidence earlier." *Tirado*, 842 F.2d at 597. A plaintiff demonstrates "good cause" if she were "misled" by the Social Security Administration, she had a "limitation[] that prevented [her] from informing [the Social Security Administration] about or submitting the evidence earlier," or "[s]ome other unusual, unexpected, or unavoidable circumstance beyond [her] control prevented [her] from informing [the Social Security

[1] Although Plaintiff's reply brief raises concerns with the original ALJ decision, *see* ECF No. 29, at 3 ("The ALJ incorrectly discounted claimant's reports of her physical and mental condition"), Plaintiff requests remand only under sentence 6, not sentence 4, of 42 U.S.C. § 405(g), *see id*. at 4 ("The evidence warrants remand under sentence six of 42 U.S.C. § 405(g)"). *See also id*. at 2. ("Defendant incorrectly argues that the Court is limited to records submitted before the Social Security Administration ("SSA"). That standard is only applied when a plaintiff is not requesting remand. *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security."). Here, Ms. Medyantseva requests that the Court remand her case to the SSA for review. This Court can and should consider the new evidence provided by Ms. Medyantseva when making its remand decision."). Thus, the Court notes that it reads Plaintiff's argument as a motion to remand to consider new evidence under sentence 6 of 42 U.S.C. § 405(g), not as a motion to affirm, modify, or reverse the decision of the Commissioner of Social Security under sentence 4 of 42 U.S.C. § 405(g).

Administration] about or submitting the evidence earlier." 20 C.F.R. § 404.970(b). "To show good cause, [the plaintiff] must adequately explain her failure to incorporate the proffered evidence into the administrative record." *Lisa v. Secretary of Department of Health & Human Services of U.S.*, 940 F.2d 40, 45 (2d Cir. 1991). Plaintiff alleges two bases through which her additional records fulfill the good cause requirement: first, she only retained counsel in July 2025, at which point her counsel sent updated requests for her medical records to her medical providers, and second, the records did not exist at the time of the administrative proceedings. ECF No. 29, at 8. Neither of these explanations is sufficient.

Although "pro se status may provide good cause for [a plaintiff's] failure to introduce [ ] evidence in the prior proceeding," pro se status alone is not necessarily sufficient. *See Jones*, 949 F.2d at 61 ("Although Lisa was a pro se applicant, she had repeatedly solicited disability certification, and we therefore concluded that she understood the desirability of obtaining an assessment of disability. In light of this demonstrated understanding of the hearing process, we held that Lisa's pro se status did not provide good cause for her failure to incorporate the newly proffered evidence in the original proceeding.") (internal quotation marks and citations omitted); *see also Rose v. Commissioner of Social Security*, 202 F.Supp.3d 231, 244 (E.D.N.Y. 2016) ("[A] plaintiff's pro se status may excuse her failure to present relevant evidence at an ALJ hearing where the ALJ failed to make a reasonable effort to acquire the evidence.") (citation omitted); *Skrodzski v. Commissioner of Social Security*, 2013 WL 55800, at *5 (E.D.N.Y. January 3, 2013) (finding good cause where plaintiff was pro se and "the ALJ failed to make any attempt to develop the record or aid Plaintiff in understanding the legal issues involved in his claim"); *Lane v. Apfel*, 2000 WL 1118921, at *9 (S.D.N.Y. Aug. 8, 2000) ("[S]ince [plaintiff] is a pro se claimant, it is likely that he did not understand that he needed these kind of highly

detailed reports to prove his claim.”).

Here, Plaintiff did not “passive[ly]” rely on the ALJ “to secure the necessary information from her treating physicians” to her detriment. *Jones*, 949 F.2d at 61. Plaintiff’s non-attorney representative timely corresponded with Plaintiff’s medical providers to seek her medical records, *see*, *e.g*., R. at 354, and Plaintiff’s medical providers transmitted her then-comprehensive records to the Social Security Administration prior to the hearing, *see*, *e.g.*, *id*. at 993. Further, Plaintiff’s representative actively participated in her hearing to elicit information about her “physical symptoms,” *id*. at 47, pain relief, *id*. at 49, physical limitations, *id*. at 50, and mental health treatment, *id*. at 52. *Cf*. *Lopez v. Astrue*, 2011 WL 6000550, at *12 (E.D.N.Y. November 28, 2011) (finding good cause for remand where plaintiff “appeared before the ALJ with only a non-attorney representative who hardly participated in the hearing and did not appear versant in the applicable law”). Thus, although Plaintiff only retained counsel in July 2025, she does not establish “good cause for her failure to incorporate the newly proffered evidence in the original proceeding.” *See Jones*, 949 F.2d at 61.

Plaintiff’s second effort to demonstrate good cause is also unavailing. “To show good cause … [the plaintiff] must go beyond showing that the proffered evidence did not exist during the pendency of the administrative proceeding. Rather, she must establish good cause for failing to produce and present the evidence at that time.” *Lisa*, 940 F.2d at 45. *See id*. at 46 (finding that retirement of plaintiff's physician was not sufficient to establish good cause); *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990) (“[A] claimant does not meet the good cause requirement simply by obtaining a more favorable report from an expert witness once his claim is denied. The claimant must establish good cause for not seeking the expert's opinion prior to the denial of his claim.”) (citation omitted); *cf. Williams v. Kijakazi*, 2022 WL 17491008, at *10 (S.D.N.Y.

December 5, 2022) (finding good cause where plaintiff's "workers' compensation refused to cover" MRI and CT scan testing even after "various practitioners ordered those examinations"); *Martinez v. Colvin*, 2018 WL 1626350, at *3 (S.D.N.Y. March 30, 2018) (finding good cause for not including fibromyalgia diagnosis in initial disability claim because "[a]ny delay in diagnosis most plausibly stems from the nature of the disorder..."); *Lopez*, 2011 WL 6000550, at *11 ("As to an inability to produce them earlier, the record indicates that [plaintiff's] financial resources and insurance coverage have restricted the amount of medical care she has been able to seek for her back injury."). Beyond establishing that the relevant medical and therapy appointments occurred after the hearing, Plaintiff has not provided a justification for her failure to produce and present the newly proffered information about her left foot symptoms, left foot diagnoses, or mental health symptoms. Allowing Plaintiff to offer such evidence on remand would "run afoul of congressional intent to discourage easy second bites at the apple and unending merry-go-rounds." *Colabufo v. Colvin*, 2014 WL 2510559, at *4 (N.D.N.Y. June 4, 2014).

The Court concludes that Plaintiff fails to demonstrate any "limitations" or "unusual, unexpected, or unavoidable circumstance[s] beyond [her] control" preventing her from submitting evidence to the ALJ. *See* 20 C.F.R. § 404.970(b). However, even if Plaintiff had met the good cause requirement, the Court nonetheless finds that the newly proffered evidence is neither "new" nor "material."

## II. The Additional Evidence Is Either Not New or Not Material

"Evidence is new if it did not exist before the ALJ decision and it is not merely cumulative of evidence already in the record." *Drysdale v. Colvin*, 2015 WL 3776382, at *9 (S.D.N.Y. June 16, 2015) (citing *Tirado*, 842 F.2d at 597). New evidence is material if it is "relevant to the claimant's condition during the time period for which benefits were denied and

probative." *Tirado*, 842 F.2d at 597 (internal citation omitted). Applying the "new" and "material" requirements as articulated in *Tirado*, the Second Circuit has found remand appropriate when a plaintiff submits a new, retrospective diagnosis that "reveal[s the] depth of illness existing but not fully appreciated at time of prior hearing," or "identif[ies] additional impairments which could reasonably be presumed to have been present [during the relevant period]…" *Lisa*., 940 F.2d at 44 (internal quotation marks and citation omitted). *See, e.g., id.* (justifying remand "when … a diagnosis emerges after the close of administrative proceedings that sheds considerable new light on the seriousness of [a claimant's] condition") (internal quotation marks omitted); *Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985) (remanding when new diagnosis of condition required re-categorization and assessment under neurological standards rather than urological). However, courts have denied remand when new evidence concerns "a later-acquired disability or [ ] the subsequent deterioration of the previously non-disabling condition." *Tirado v. Bowen*, 705 F.Supp. 179, 182 (S.D.N.Y. 1989) (citing *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984)).

**a. Foot Pain**

The Court considers several sets of records which Plaintiff offers as "new" and "material" evidence of severe and continued pain in her left foot: first, a May 2024 assessment of chronic foot pain; second, an April 2025 diagnosis of Morton's Neuroma; and third, a December 2025 evaluation for vascular surgery. *See* ECF No. 22, at 4-6.

First, the Court finds that Plaintiff's May 2024 diagnosis of chronic foot pain by Dr. Eduard Rozner, ECF No. 23-7, P. Ex. A at 283, is not "new" because it is cumulative of evidence already in the record. *See Tirado*, 842 F.2d at 597. At pages 998-1000 in the administrative record, during a March 18, 2024, outpatient evaluation of Plaintiff, Plaintiff's physical therapist

noted a diagnosis of "Left foot pain," detailing this pain as "worst in L[eft] toes and 5th metatarsal" and setting a goal to "decrease pain from 6 to 3/10." During an earlier visit on January 22, 2024, also in the administrative record, Dr. Karen Cruz documented Plaintiff's "pain in the left foot" which was "worse after long periods of standing or walking." R. at 1003. On October 11, 2023, Plaintiff's physical therapist recorded that Plaintiff "[had] pain in [t]he left foot when ambulating several blocks" and "swelling … after a prolonged period of walking or standing." *Id*. at 979-980. On May 25, 2023, Dr. Ioanis Atoynatan diagnosed Plaintiff with "Left foot pain." *Id*. at 780. Because Plaintiff's ongoing left foot pain had already been well-documented in the administrative record, Dr. Rozner's diagnosis of chronic left foot pain is better characterized as "cumulative of what is already in the record" rather than new. *See Tirado*, 842 F.2d at 597. Similarly, medical records from Plaintiff's June 10, 2025, visit to Dr. David Labay at South Brooklyn Podiatry, which noted "mild, low-grade pain of her left lateral foot" with no "acute pedal concerns," ECF No. 23-15, P. Ex. C at 11, reveal no more than the administrative record described above.

Second, Plaintiff offers an April 2025 diagnosis of Morton's Neuroma by Dr. Pavel Khromchenko, along with Plaintiff's subjective complaints of "swelling, pain and severe stiffness in her Left ankle, foot and heel." ECF No. 23-14, P. Ex. B at 9-11. Plaintiff's diagnosis of Morton's Neuroma is undoubtedly new: it did not exist before the ALJ decision, and it is not cumulative of evidence already in the record. However, because the diagnosis is not "relevant to [Plaintiff's] condition during the time period for which benefits were denied," the Court finds that the new diagnosis is not material. *See Tirado*, 842 F.2d at 597. Plaintiff's medical records list the date of onset for the condition as March 20, 2025. ECF No. 23-14, P. Ex. B at 9. Plaintiff described the pain as beginning a "few weeks" prior to the appointment, *id.*, which Defendant

notes was "nearly a year after the ALJ's decision," ECF No. 28, at 13. Dr. Khromchenko labeled the diagnosis as "acute," rather than "chronic," "onset of Left ankle, foot pain with Metatarsal neuroma which began after the fracture." ECF No. 23-14, P. Ex. B at 11. Further, Dr. Khromchenko did not see or evaluate Plaintiff prior to the ALJ decision and thus did not provide detail on the extent to which Plaintiff's new symptoms related back to her condition at the time of the ALJ decision. *See id*. (listing date of initial evaluation as "04/08/25"). Considering these facts, and the departure from Plaintiff's August 23, 2024, comments to her podiatrist that she did "not have any pain or problems anymore with the fracture or the titanium plate and screws," and she had "started doing a lot more walking and [was] anticipating starting to run again at least 2 miles a day," ECF No. 23-15, P. Ex. C at 46, the Court finds that Plaintiff's new diagnosis of Morton's Neuroma does not reflect "the severity and continuity of impairments *existing*" at the time of Plaintiff's hearing before the ALJ, *Lisa*, 940 F.2d at 44 (citation omitted) (emphasis added). In other words, the new diagnosis is not "material."[2]

Third, Plaintiff presents a December 2025 evaluation by Dr. Alexandar Shiferson for vascular surgery. ECF No. 23-3, P. Ex. A at 119. Although Dr. Shiferson noted that Plaintiff had "normal ambulation" and "no difficulty doing errands alone," he also detailed Plaintiff's complaints of left foot "coldness, cramping, [and] numbness." *Id*. at 119-121. During her hearing

[2] To the extent that Plaintiff is experiencing a new or worsening pain in her left foot, she may be able to file a new application for SSI benefits listing an onset date of March 20, 2025. *See* R. at 100 ("If your condition gets worse and keeps you from working, please contact any Social Security office about filing another application."); *see, e.g., Miller v. Commissioner of Social Sec.*, 848 F.Supp.2d 694, 706 (E.D. Mich. 2011) (denying motion to remand in light of Commissioner's arguments that "[s]ince plaintiff's condition had gotten worse, the appropriate remedy would be for her to file a new claim for benefits alleging an onset date consistent with the aggravation or deterioration of [her] condition"); *Pilet v. Apfel*, 20 F.Supp.2d 240, 247 (D. Mass. 1998) ("New evidence will not be considered material if it concerns deterioration of a non-disabling impairment that occurred subsequent to the decision."); *Szubak*, 745 F.2d at 833 ("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.").

before the ALJ, Plaintiff had described similar sensations of "pain, tingling, [and] numbness" in her left foot and ankle. R. at 48. Previous medical appointments also documented "numbness and tingling" in Plaintiff's left toes, *id*. at 801, although she denied any numbness or tingling at other times, *id*. at 839. Therefore, the symptoms which Dr. Shiferson listed were not absent from the record, nor do they impose more severe limitations on Plaintiff than the ALJ had appreciated at the time of the hearing. *See Lisa*, 940 F.2d at 44. Accordingly, the additional evidence which Plaintiff provides is not "new" and does not justify remand.

**b. Mental Health Issues**

The Court also considers several sets of records which Plaintiff offers as new and material evidence of the depth and severity of her mental health issues: first, a set of messages which Plaintiff sent to Ms. Gonzalez, a social worker, in May 2024, ECF No. 23-5, P. Ex. A at 171; and second, notes from psychiatry visits spanning February to December 2025, ECF No. 23-2, P. Ex. A at 30-105. Plaintiff acknowledges that the new records "are not new, unique diagnoses; they are the same issues Ms. Medyantseva has been struggling with since … 2022." ECF No. 29, at 8.

First, Plaintiff submits patient records and notes from social worker Rosa Gonzalez, including a note dated May 7, 2024, documenting Plaintiff's concerns with having "former tobacco use" listed in her medical records, which she communicated to Ms. Gonzalez through several voicemails. ECF No. 23-5, P. Ex. A at 171. In the same voicemail messages, Plaintiff stated that "all systems" were against her. *Id*. Plaintiff further provides notes from a group therapy session on December 4, 2025, where she was initially "quite guarded and slightly paranoid" but was otherwise "well engaged during the group," later apologizing for her initial discomfort. ECF No. 23-2, P. Ex. A at 37. On December 5, 2025, Plaintiff reportedly canceled

future group therapy sessions. *Id*. at 38. Plaintiff now alleges that this "new" evidence demonstrates that she "is also anxious about how she is being perceived by others." ECF No. 22, at 7.

However, this evidence is not "new" because it is cumulative of evidence already in the record. *See Tirado*, 842 F.2d at 597. During an August 30, 2023, visit to Ms. Gonzalez, Plaintiff described feeling "targeted by the system." R. at 904. Similarly, at an April 10, 2023, visit to Ms. Gonzalez, Plaintiff alleged that she had been "targeted" by shelter staff who had "moved her to a room with chronically mentally ill women." *Id*. at 422-423. On August 10, 2022, Plaintiff shared with Ms. Gonzalez her apprehension over living in an apartment with a woman "she [did] not have a good connection with." *Id*. at 441. During a comprehensive psychiatric assessment in 2022, Plaintiff told a social worker that she felt "ashamed" over the actions of Russia in Ukraine, and "a few of her friends and social circle refuse to communicate with her." *Id*. at 444. The newly proffered evidence, which fails to "set out [Plaintiff's] personal history in greater depth than already in record," *Lisa*, 940 F.2d at 44 (citing *Szubak*, 745 F.2d at 833), simply mirrors what was before the ALJ.

Furthermore, the voicemails and group session notes do not "indicate [P]laintiff's subjective symptomology during those visits, any examination results, or any conclusions concerning the conditions." *See Ashley E. v. Commissioner of Social Security*, 2023 WL 6217792, at *7 (N.D.N.Y. August 21, 2023). Without establishing "any functional limitations or examination results that the ALJ could rely on to determine [P]laintiff's functioning," *id*., the supplementary evidence is unlikely to alter the Commissioner's decision and thus does not satisfy the materiality requirement. *See Lisa*, 940 F.2d at 44.

Following the May 2024 voicemail to Ms. Gonzalez, Plaintiff took a hiatus from therapy,

then chose to resume in June 2025. ECF No. 22, at 7. Plaintiff supplies records from a therapy session on July 15, 2025, where she described experiencing "recent bouts of sadness and feelings of loneliness." ECF No 23-2, P. Ex. A at 91. Subsequent appointments documented "mild episodes of anxiety, characterized by physical discomfort with chest tightness and feeling a 'pit' in her stomach…" *Id*. at 50. This evidence is similarly duplicative of evidence already in the record prior to the ALJ's decision. *See Tirado,* 842 F.2d at 597. For example, on January 4, 2023, Dr. Pinkhas noted that Plaintiff was "depressed," worried "about her future," suffered from "episodes of crying and insomnia," and had "feelings of guilt." R. at 1148. During a May 4, 2023 hospital visit, Dr. Aaron Ryoo recorded that Plaintiff likely had "anxiety" or a "panic attack" after she came into the hospital reporting "shortness of breath." *Id*. at 1627-1628. Soon thereafter, during a May 16, 2023 psychiatric evaluation, Dr. Huifen Feng documented that Plaintiff had "increased anxiety and chest palpitation[s]" resulting from her experiences at a women's shelter. *Id*. at 894.

Plaintiff also provides records of a therapy session on August 27, 2025, where she requested help to cope "with her family situation in Russia." ECF No. 23-2, P. Ex. A at 52. Not only does this evidence echo the administrative record, *see, e.g*., R. at 433 (Plaintiff "worries about her twin nephews who live in Russia and will soon turn 18 y/o given the ongoing war with Ukraine"); *id*. at 968 ("her twin nephews in Russia may be getting enrolled in military, not by their choice as the Russian/Ukrainian war continues"), but at the same August 27, 2025, appointment, Plaintiff "agree[d]" that "she [was] too stable" to see Dr. Zharovsky, ECF No. 23-2, P. Ex. A at 52. Thus, the additional evidence which Plaintiff provides is neither new nor material---that is, Plaintiff does not supply any reason that the newly submitted evidence would influence the ALJ to decide her application differently. *See Tirado*, 842 F.2d at 597.

In addition, Plaintiff offers a treatment plan from Dr. Zharovsky on October 29, 2025, to "continue gabapentin … for anxiety." ECF No. 23-2, P. Ex. A at 46. Throughout the administrative record, several providers and Plaintiff herself had already noted that Plaintiff took prescription medications for anxiety. *See*, *e.g.*, R. at 299 (listing Plaintiff's usage of prescription "Hydroxyzine" for "lack of sleep, anxiety"); *id*. at 548 ("Please give Atarax … for anxiety"). Indeed, Plaintiff's "new" evidence reflects that anxiety medication granted her "significant relief from physical tension and anxious thought spirals." *See* ECF No. 23-2, P. Ex. A at 48. Consequently, the Court finds the newly submitted evidence to be neither new nor material.

The ALJ came to the determination that Plaintiff had a "mild limitation" "[i]n interacting with others," after considering how "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," including longitudinal treatment notes and medical examinations demonstrating Plaintiff's "cooperative attitude." R. at 14-16. Plaintiff's self-reported symptoms and subjective allegations of social limitations contained in the additional records do not resolve any of the ALJ's concerns about Plaintiff's credibility, and they are unlikely to result in a positive determination by the Commissioner.

In sum, Plaintiff's claim that the additional evidence submitted after the Commissioner's decision is new, material, and would influence the Commissioner to decide her application differently is without merit.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is **DENIED.** The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 21 and close this case.

**SO ORDERED.**

**Dated: July 31, 2026**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**